IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL W. ROBERTO,  :<br>Plaintiff  : <br>  : <br>vs.  : <br>  : <br>CAROLYN W. COLVIN, Acting  : <br>Commissioner of Social Security  : <br>Defendant  : <br>  : | CIVIL NO. 1:CV-13-1827 <br><br>(Judge Caldwell) |

*M E M O R A N D U M*

I.  *Introduction*

Pursuant to 42 U.S.C. § 405(g), plaintiff, Michael W. Roberto, seeks review of a decision denying him supplemental security income under the Social Security Act. 42 U.S.C. §§ 1381-1383f.  The defendant is Carolyn W. Colvin, the Acting Commissioner of Social Security.

Plaintiff claims to be disabled based on a combination of mental and physical problems.  His mental infirmities include anxiety, depression, and bipolar disorder.  His physical illnesses involve his left leg and back.  He filed his application for benefits on April 8, 2010, (Tr. 18),[1] alleging a disability onset date of July 1, 2006.  (*Id.*).  He was twenty-seven years old on the date of his application.  (Tr. 175).[2]  On October 25,

---

[1] References to "Tr. ___" are to pages of the administrative record (Doc. 9) Defendant filed on September 23, 2013.

[2] On October 17, 2006, Plaintiff had filed a previous application for supplemental security income.  (Tr. 77).  The ALJ denied that application on September 3, 2008.  (Tr. 88).

2011, a hearing was held (*id.*), and on February 23, 2012, the administrative law judge (ALJ) denied benefits. (Tr. 27). On May 8, 2013, the Appeals Council denied a request for review. (Tr. 1).

In this action, Plaintiff claims the ALJ erred in the following ways. First, the ALJ rejected the opinions of Dr. Scott McKimm, his personal care physician, and Dr. Jawahar N. Suvarnakar, a consulting physician, on the issue of disability, without identifying contrary medical evidence. Second, the ALJ improperly relied on her own lay analysis of the medical evidence rather than on the opinions of the medical professionals appearing in the record. Third, the ALJ made a factual error in stating that Plaintiff had not received any treatment for his back or leg conditions for almost a year. Fourth, the ALJ improperly rejected Dr. Suvarnakar's opinion on the ground that the doctor's opinion appeared to be based on Plaintiff's own subjective reports. Fifth, the ALJ had a duty to contact Drs. McKimm and Suvarnakar to clarify their opinions when they were not apparent from the record. Sixth, the ALJ improperly relied on the description of Plaintiff's activities of daily living by Dr. Thomas E. Radecki, his treating psychiatrist, in the face of the testimony of Plaintiff's father, who testified that Plaintiff could not do these activities and that Plaintiff will falsely lead a person to believe he has done certain activities. Seventh, these activities were only sporadic and could not be used to decide Plaintiff was not disabled. Eighth, the ALJ improperly failed to assess the credibility of Plaintiff's father.

II. *Background*

   A. *Testimony at the Administrative Hearing*

At the October 2011 hearing on his disability application, Plaintiff testified as follows, in pertinent part. His last job was as a home health care provider in 2006. He left it because the job "was too hard physically on his legs, cleaning the house." (Tr. 40). He has not worked anywhere since. (Tr. 40). Plaintiff treats with Dr. McKimm for edema. (Tr. 41). Plaintiff was taking Lasix for the edema, but it was not helping; the only thing that works is elevating his legs and body. (Tr. 41).

Plaintiff lives at his parents' home. (Tr. 39). They both work. (Tr. 40). He spends his days in the basement, keeping his legs elevated and trying not to be stressed. (Tr. 42). He keeps the shades in the house closed. (Tr. 44). He does not answer the door or the phone. (Tr. 44, 45). He can bathe and dress himself, but it takes some time because of the "impairments" between his legs and back. (Tr. 42). He does no chores around the house because of his legs and back. (Tr. 43). He does no shopping because of his legs and back and because of the stress and anxiety of going out and meeting people. (Tr. 43). He only gets three to five minutes of exercise at a time. (Tr. 43). He plays video games and watches television. (Tr. 43, 44). However, he cannot complete the video game nor remember the television show. (Tr. 50). He drives, but only when he has to, for example, to the clinic. (Tr. 47).

Plaintiff has swelling in his knees and ankles on a daily basis. (Tr. 48). It prevents him from being upright and moving. Plaintiff has had a number of surgeries on

-3-

his legs, but they have not resolved the swelling or pain. (Tr. 48-49). For a number of years, Plaintiff was prescribed large doses of OxyContin to treat his pain. (Tr. 49). The drug ruined his life, financially, physically, and mentally. (Tr. 49).

Plaintiff's parents have tried to give him chores to do. However, if he tried to walk the dog, he would be in a lot of pain. (Tr. 51). If he tried to take the garbage out, he would get pains in his legs and the edema would come back worse. (Tr. 51).

Plaintiff's anxiety affects him three to five times per day. (Tr. 52). When it happens, he takes his medication and lies down. He usually falls asleep and can focus on what is causing the anxiety only after about an hour and a half to two hours. (Tr. 52).

Plaintiff has muscle spasms about ten times a day, each lasting for up to thirty seconds, after which he has to sit or lie down for up to half an hour. (Tr. 54). Plaintiff takes Baclofen for the muscle spasms. (Tr. 53). He also takes Clonazepam, Prevacid and Miralax. (Tr. 53). He has acid reflux disease (GERD) and takes the Prevacid for that. (Tr. 40, 41). Plaintiff takes methadone three times per week at Discovery House. (Tr. 42). The side effects of his medications are tiredness and insomnia. (Tr. 52).

Plaintiff denied that he has worked after 2006 in a business making chairs, in a business involving rough-cut lumbar, in a polishing business, or under the table. (Tr. 46). The only time he built an Adirondack chair was in high school. (Tr. 40). Additionally, Plaintiff has not hunted in ten years or walked the dog in five years. (Tr. 46, 51).

Plaintiff's father also testified at the hearing. He testified that Plaintiff does very little of anything and needs to be told to shower, eat, and clean up after himself. (Tr. 58-59). His parents have been unsuccessful in getting him to do any activities around the house. (Tr. 59). Plaintiff has difficulty focusing on topics, and goes on tangents during conversations. (Tr. 60, 63). Plaintiff's father testified that Plaintiff has not engaged in any activities like woodworking, cutting wood, or work in a polishing business, but that he often talks about things as if he has done them, when in reality he has not. (Tr. 66-67).

B. *Medical History*

As Defendant notes, Plaintiff claims a disability onset date of July 1, 2006, but submitted no medical evidence bearing on that date. On October 3, 2007, he was admitted to Discovery House for a methadone maintenance program to overcome an eleven-year opiate addiction. (Tr. 368). The intake form indicated he was looking for employment (Tr. 368) and that his counselor at Discovery House would assist him in doing so. (Tr. 368).

The records show that in January 2008 Plaintiff was treating with Dr. Radecki, his psychiatrist. At that time, Dr. Radecki diagnosed major depression, posttraumatic stress disorder, panic attacks, nicotine dependence and cannabis abuse. (Tr. 261). He prescribed Xanax. Thereafter, Plaintiff saw Dr. Radecki about once a month through July 18, 2011. Dr. Radecki would periodically note Plaintiff's activities. In November 2008, Plaintiff reported he was doing repairs with his father. (Tr. 264). In June 2008, Plaintiff reported that he "builds, cuts wood." (Tr. 262). In January 2009, he

reported clearing driveways for neighbors with his four-wheeler. (Tr. 264). In May 2009, he was tending his garden of herbs and tomatoes. (Tr. 258). In November 2009, he was working "under the table" making Adirondack chairs. (Tr. 259). In that month, he also reported he wanted to get vocational funding for tool-making studies. (Tr. 258). In January 2010, he was getting a lot of exercise shoveling snow. (Tr. 259). In April 2010, he was working "under the table" doing polishing work. (Tr. 259). In May 2010, he was participating in fly-tying class with his father. (Tr. 360). In June 2010, he was fixing a brick sidewalk. (Tr. 360). In September 2010, he worked in a wood shop making Adirondack chairs, and swings, beds, etc. (Tr. 360). In June 2011, he reported that he was fishing and not making furniture with his friend due to a lack of work. (Tr. 361).

In April, May and June of 2010, Plaintiff reported that he walked for thirty minutes each day. (Tr. 360). In September and October, 2010, he said he walked the dog in the morning. (Tr. 360).

In November 2009, Dr. Radecki noted that Plaintiff could "obviously work and hunt fairly well." (Tr. 259). In September 2010, Dr. Radecki noted that he could "see no evidence of significant pain nor any reason [Plaintiff] can't work." (Tr. 360).

The records show that Plaintiff treated with Dr. McKimm from April 2009 through March 2011. (Tr. 238-256; 307-357). He was treated at various times for depression, anxiety and radiculopathy.[3] The first notation of edema was in October 2010.

---

[3] Complaints of leg pain and back pain arise from motorcycle and motor-vehicle accidents. (Tr. 322).

(Tr. 337). On several visits, there were no complaints of anxiety or depression (Tr. 242, 249, 346, 348, 351) or of back pain. (Tr. 242, 249, 348). On one occasion, March 2011, Plaintiff complained of back pain but denied having a limited range of motion and his gait was normal. (Tr. 313). On February 24, 2010, Dr. McKimm checked a box on a form indicating Plaintiff was permanently disabled from any gainful employment. (Tr. 306).

Plaintiff had a state-ordered consultative examination with Dr. Bruce Simons in July 2010 on his mental impairments. Dr. Simons opined as follows. Plaintiff's speech was slow, but his thoughts were not disjointed or broken and there was no indication of a thought disorder. (Tr. 277). Plaintiff's abstract thinking was in the above-average range, and his intelligence and fund of knowledge were in the average range. (Tr. 277). His concentration and attention span were below average (Tr. 277), and his immediate retention recall was in the slightly below average range. (Tr. 278). His Global Assessment of Functioning (GAF) was 52. (Tr. 278). On an accompanying questionnaire, Dr. Simons indicated that Plaintiff had only moderate limitations on his ability to carry out short simple, instructions; understand, remember, and carry out detailed instructions; and make judgments on simple work-related decisions. (Tr. 279). Dr. Simons also found that Plaintiff had no limitations on his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting. (Tr. 279).

Plaintiff had a state-ordered consultative examination on his physical abilities with Dr. Suvarnakar in August 2010. The doctor concluded the following. Plaintiff can walk without assistive devices (Tr. 300), and he has a generally normal gait.

(Tr. 301). He could achieve heel and toe walking although somewhat slow. (Tr. 301). Plaintiff could perform straight leg raising to 60 degrees bilaterally seated and lying down. (Tr. 301). He had intact sensation and full strength. (Tr. 301). Plaintiff could lift and carry ten to fifteen pounds, stand and walk one to two hours, and sit two to three hours. (Tr. 301).

Jan Melcher, Ph.D., the state consultative expert on Plaintiff's mental residual functional capacity, reviewed Plaintiff's records and concluded that Plaintiff "could meet the basic mental demands of competitive work on a sustained basis . . ." (Tr. 284).

III. *The ALJ's Decision*

In relevant part, the ALJ made the following findings. First, Plaintiff had "the following severe impairments: "major depressive disorder; posttraumatic stress disorder (PTSD); panic disorder; bipolar disorder; history of polysubstance abuse and dependence; history of multiple fractures to the lower extremities with osteoarthritis; osteoarthritis of the lumbar spine with radiculopathy; edema; obesity; and gastroesophageal reflux disease (GERD) . . . ." (Tr. 20). Second, Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (Tr. 20). Third, in relevant part, Plaintiff:

> has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that he can lift and carry only 10 pounds, stand and walk only 4 hours and sit only 4 hours in an 8-hour workday, with the ability to alternate between positions every 30 minutes . . . and is limited to jobs

> involving understanding, remembering, and carrying out only
> simple instructions and making only simple work-related
> decisions, involving no interaction with the general public and
> only occasion interaction with coworkers and supervisors.

(Tr. 21-22). Fourth, Plaintiff has no past relevant work. (Tr. 26). Fifth, at twenty-seven years old on the date of the application, Plaintiff was defined as a younger individual. (Tr. 26). Sixth, Plaintiff had at least a high school education. (Tr. 26). Seventh, "[c]onsidering {his] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ." (Tr. 26). Plaintiff could be a waxer, assembler, inspector/checker, or sorter. (Tr. 27).

In making these findings, the ALJ did not fully credit Plaintiff's testimony concerning his symptoms and limitations. In doing so, she cited the following portions of his medical history, in chronological order. (Tr. 24-26).

At his April 2010 visit with Dr. Radecki, the month he filed his application for benefits, Plaintiff said he was "doing polishing work under the table" and was walking thirty minutes a day. (Tr. 259). In the May 2010 visit, Dr. Radecki opined that he saw "no reason why [Plaintiff] can't work." (Tr. 259). He also noted that Plaintiff was in a fly tying class with his father. (Tr. 259). In the May 2010 emergency room visit for anxiety, Plaintiff was at first hyperventilating but later asked if he could leave to smoke outside. (Tr. 270).

At his June 2010 visit with Dr. Radecki, Plaintiff said the medication was helping, that he was feeling good, walking thirty minutes a day, swimming some and

-9-

fixing a brick sidewalk. (Tr. 360). At the two visits Plaintiff had with Dr. McKimm in July 2010, Plaintiff denied anxiety, depression or sleep disturbance. (Tr. 346, 348). In the second July visit, Plaintiff's affect was normal and his mood was euthymic. (Tr. 349).

Plaintiff's state-ordered consultative examination with Dr. Bruce Simons in July 2010 revealed the following. Plaintiff's speech was slow, but his thoughts were not disjointed or broken and there was no indication of a thought disorder. (Tr. 277). Plaintiff's abstract thinking was in the above-average range, and his intelligence and fund of knowledge were in the average range. (Tr. 277). His concentration and attention span were below average (Tr. 277), and his immediate retention recall was in the slightly below average range (Tr. 278), but his Global Assessment of Functioning (GAF) was 52. (Tr. 278). This indicates only moderate symptoms. (Tr. 23). This assessment was confirmed by Dr. Simon's indication on an accompanying questionnaire that Plaintiff had only moderate limitations on his ability to carry out short simple, instructions; understand, remember, and carry out detailed instructions; and make judgments on simple work-related decisions. (Tr. 279). Dr. Simons also found that Plaintiff had no limitations on his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting. (Tr. 279).

In Plaintiff's state-ordered consultative examination on his physical abilities with Dr. Suvarnakar in August 2010, the doctor noted the following. Plaintiff can walk without assistive devices (Tr. 300), and he has a generally normal gait. (Tr. 301). He could achieve heel and toe walking although somewhat slow. (Tr. 301). Plaintiff could

perform straight leg raising to 60 degrees bilaterally seated and lying down. (Tr. 301). He had intact sensation and full strength. (Tr. 301). The doctor opined that Plaintiff could lift and carry ten to fifteen pounds, stand and walk one to two hours, and sit two to three hours. (Tr. 301).

In September 2010, Plaintiff visited with Dr. Radecki. At that time, Plaintiff said he was working in a wood shop. (Tr. 360). Dr. Radecki noted that he saw "no evidence of significant pain nor any reason he can't work." (Tr. 360). In an October 2010 visit with Dr. McKimm, Plaintiff reported edema. (Tr. 337). In a January 2011 visit with Dr. McKimm, Plaintiff said his depression was controlled at that time and requested a report from Dr. McKimm to assist him in seeking social security disability benefits. (Tr. 323). Dr. McKimm noted edema. (Tr. 325). The ALJ noted the last visit with Dr. McKimm was in March 2011. (Tr. 371).

In April 2011, Dr. Radecki noted that Plaintiff's mother had called to request more medication because Plaintiff was using it too fast. (Tr. 361). In a visit that same month, Dr. Radecki noted that Plaintiff had "little motivation to improve" and that he "never decreases his methadone." (Tr. 361). In a June 2011 visit with Dr. Radecki, the doctor noted that Plaintiff said he was fishing and not making furniture with his friend due to lack of work. (Tr. 361). The ALJ noted that the last visit with Dr. Radecki was in July 2011. (Tr. 362).

The ALJ then opined concerning Plaintiff's physical limitations:

> The objective findings of record and the claimant's treatment
> history do not fully support the degree of limitations he

-11-

> alleges. With regard to his back impairments, while the claimant had a positive straight leg raise test at the consultative examination, he likewise had full strength and intact sensation, and was able to walk normally and walk on his heels and toes, which appears to be inconsistent with his alleged limitations. Likewise, the only treatment the claimant has received for his back impairment has been medication prescribed by a primary care doctor. The claimant has not been evaluated or treated by a specialist and no doctor has recommended surgery on his back. As for the claimant's leg swelling, this was documented at only one visit with his primary care doctor, and the consultative examiner specifically noted no edema on examination. It is also noted that claimant has not received any treatment for his back or leg symptoms in almost a year.

(Tr. 24).

The ALJ wrote as follows concerning Plaintiff's mental impairments:

> As for his mental impairments, the record contains some objective evidence of impairment in attention, concentration, and memory, but does not suggest that the claimant has any more than moderate limitation in those areas. Further, although the claimant spoke slowly and answered questions slowly, his thought process was normal. It is further noted that the claimant's treating primary care doctor and his treating psychiatrist did not document any significantly abnormal mental health findings. Additionally, since his application date, the only treatment the claimant has received for his mental symptoms has been medication prescribed by a psychiatrist and a primary care physician, and one visit to the emergency room. The claimant has not undergone any intensive outpatient therapy and has not been admitted as a psychiatric inpatient at any time since his application date. It is further noted that the claimant has not received any mental health treatment at all in over 6 months, indicating that his symptoms are not as limiting as he has alleged.

(Tr. 24-25).

The ALJ continued with other reasons for her conclusions as to Plaintiff's residual functional capacity and his credibility: (1) Plaintiff can take care of his own personal needs, watch television, play video games and drive; (2) his psychiatrist noted many times that Plaintiff was working "'under the table' at relatively physically demanding jobs and performing physical activities such as hunting and fishing," contrary to Plaintiff's assertion that he had not been working since 2006; and (3) Plaintiff's official employment records indicate very little earnings in the past ten years, even before he applied for benefits. (Tr. 25).

In regard to the testimony of Plaintiff's father, the ALJ gave it the same credibility assessment she gave Plaintiff's testimony. She noted that the testimony was consistent with that of Plaintiff but that it did not indicate Plaintiff was disabled, just unmotivated, as indicated by Dr. Radecki's medical notes. (Tr. 25).

The ALJ gave great weight to the opinion of Dr. Simons on the basis that it was consistent with the doctor's observations and objective findings and with Plaintiff's treatment history. (Tr. 25). The ALJ also gave great weight to the opinion of Jan Melcher, Ph.D., the state consultative expert on Plaintiff's mental residual functional capacity, on the basis that it was consistent with the objective findings of record and supported by the record as a whole, including Plaintiff's mental health treatment history. (Tr. 25).

The ALJ did not give weight to Dr. Suvarnakar's opinion, reasoning that it was not consistent with the objective evidence of record, including his own examination,

or supported by Plaintiff's treatment history and his activities of daily living. Nor did the ALJ gave any weight to the form Dr. McKimm completed by checking a box indicating Plaintiff was disabled from any gainful employment. The ALJ reasoned that the form was inconsistent with Dr. McKimm's own notes, which did not show any abnormal objective findings. It was also inconsistent with Plaintiff's conservative treatment history and the activities he reported to Dr. Radecki.

IV. *Standard of Review*

The Appeals Council's denial of Plaintiff's request for review means the ALJ's decision is the decision of the Commissioner. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 91 (3d Cir. 2007). It is therefore the ALJ's decision we review. In doing so, we review the ALJ's application of the law de novo, *id., and* we review the ALJ's factual findings to see if they are supported by substantial evidence. *Id.* (citing in part 42 U.S.C. § 405(g)). Generally, substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)(quoted case omitted). It is "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoted case omitted).

We must uphold factual findings supported by substantial evidence. *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). It follows "that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Put another way, we

cannot reverse the Commissioner's decision simply because we might "have decided the factual inquiry differently." *Fargnoli, supra,* 247 F.3d at 38.

V. *Discussion*

Plaintiff first argues that the ALJ improperly rejected the opinions of Dr. McKimm, his personal care physician, and Dr. Suvarnakar, the state consulting physician, without identifying contrary medical evidence.

Plaintiff complains that the ALJ refused to accept Dr. McKimm's checkbox form indicating that Plaintiff was disabled. The ALJ rejected this opinion because it was inconsistent with Dr. McKimm's own notes, which did not show any abnormal objective findings. It was also inconsistent with Plaintiff's conservative treatment history and the activities he reported to Dr. Radecki. We reject Plaintiff's argument. An ALJ may reject a treating physician's opinion on the basis of contrary medical evidence. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ adequately referred to contrary medical evidence in her summary of the record at Tr. 23-26.

As to Dr. Suvarnakar, Plaintiff complains the ALJ did not adequately show why she rejected his opinion that Plaintiff could not sit for more than two to three hours or stand for more than one to two hours. The ALJ did not give weight to Dr. Suvarnakar's opinion, reasoning that it was not consistent with the objective evidence of record, including his own examination, or supported by Plaintiff's treatment history and his

-15-

activities of daily living. We think this was an adequate explanation, given the ALJ's review of the record at Tr. 23-26.[4]

Plaintiff's second argument is that the ALJ improperly relied on her own lay analysis of the medical evidence rather than on the opinions of the medical professionals appearing in the record. An ALJ "may not employ her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Nor may an ALJ rely on her own lay analysis of the medical records. *Cruz v. Colvin*, No. 12-CV-0135, 2013 WL 5299166, at *21 (M.D. Pa. Sept. 17, 2013)(Caldwell, J.)(citing in part *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990)). We are satisfied that the ALJ did not do so here and that her decision was based on the medical evidence, not her own opinion.

Plaintiff's third argument is that the ALJ made a factual error in stating that Plaintiff had not received any treatment for his back or leg conditions for almost a year. We disagree. Plaintiff was being treated for these conditions by Dr. McKimm. The last McKimm note in the record was from March 2011. (Tr. 309). See also Tr. 371. The ALJ's decision was made on February 23, 2012, almost a year later.

Plaintiff's fifth argument is that the ALJ had a duty to contact Drs. McKimm and Suvarnakar to clarify their opinions when they were not apparent from the record.

---

[4] This conclusion also takes care of Plaintiff's fourth argument, that the ALJ improperly rejected Dr. Suvarnakar's opinion on the ground that the doctor's opinion appeared to be based on Plaintiff's own subjective reports.

We disagree. A review of these doctor's records indicate that no clarification was necessary to evaluate them.

Plaintiff's sixth argument is that the ALJ improperly relied on the description of Plaintiff's activities of daily living by Dr. Thomas E. Radecki, his treating psychiatrist, in the face of Plaintiff's father's testimony. That testimony was that Plaintiff could not engage in those activities and that Plaintiff will lead a person to believe he has done certain activities, when in fact he has not. Plaintiff's eighth argument is that the ALJ improperly failed to assess the credibility of Plaintiff's father and substituted her own subjective beliefs as to Plaintiff's residual functional capacity. We reject the latter argument. The ALJ did assess Plaintiff's father's credibility, and did so properly, finding him not fully credible based on Dr. Radecki's medical notes, not on her own subjective assessment of Plaintiff's residual functional capacity. It follows that Plaintiff's sixth argument fails, that the ALJ should not have relied on Dr. Radecki's notes in the face of Plaintiff's father's testimony.

Plaintiff's seventh argument is that the activities Dr. Radecki describes were only sporadic and could not be used to decide Plaintiff was not disabled. Plaintiff correctly asserts that sporadic activity cannot be used to determine that a plaintiff is not disabled. *See Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981). However, Dr. Radecki was not describing sporadic activity. It was instead activity over a continuous

-17-

period of time.

        We will issue an appropriate order.

                              <u>/s/William W. Caldwell</u>
                              William W. Caldwell
                              United States District Judge

Date: April 28, 2014